**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY and CENTER FOR ENVIRONMENTAL HEALTH, )<br><br>*Plaintiffs*, )<br><br>v. )<br><br>MICHAEL REGAN, as Administrator of the Environmental Protection Agency, and ENVIRONMENTAL PROTECTION AGENCY, )<br><br>*Defendants*. ) | Civil Action No. 1:24-cv-2194 (JEB) |

**MEMORANDUM IN SUPPORT OF
INHANCE TECHNOLOGIES LLC'S MOTION TO DISMISS**

J. Tom Boer (D.C. Bar. No. 469585)
HOGAN LOVELLS US LLP
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Tel: (415) 274-2300
tom.boer@hoganlovells.com

Susan M. Cook (D.C. Bar No. 462978)
Catherine E. Stetson (D.C. Bar No. 453221)
Adam M. Kushner (D.C. Bar No. 426344)
Marlan Golden (D.C. Bar No. 1673073)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Tel: (202) 637-5600
susan.cook@hoganlovells.com

Dated: September 11, 2024

*Counsel for Inhance Technologies LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ......................................................................................................................1

BACKGROUND .......................................................................................................................1

STANDARD OF REVIEW ........................................................................................................4

ARGUMENT .............................................................................................................................5

    I.     PLAINTIFFS LACK STANDING. ...........................................................................5

          A.    Plaintiffs Lack Associational Standing. ....................................................... 5

          B.    Plaintiffs Fail To Establish Organizational Standing.................................... 8

    II.    PLAINTIFFS FAIL TO STATE A CLAIM. ..........................................................10

          A.    Plaintiffs' Requested Relief Under TSCA Section 6 Is Not
              Available. ................................................................................................. 10

              1.    EPA Must Conduct A Risk Evaluation To Determine
                    Unreasonable Risk Before Publishing A Rule Under TSCA
                    Section 6.................................................................................... 10

              2.    Plaintiffs Cannot Rely On EPA's Prior TSCA Section 5
                    Order To Satisfy Section 6's Risk Evaluation Requirement. ....... 12

          B.    Plaintiffs Are Not Entitled To Section 7 Relief. ....................................... 15

CONCLUSION........................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................................4

*Association of Irritated Residents v. EPA*,
494 F.3d 1027 (D.C. Cir. 2007) ......................................................................................16

*Atherton v. D.C. Off. of Mayor*,
567 F.3d 672 (D.C. Cir. 2009) ...........................................................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007) ...........................................................................................................4

*Bourbeau v. Jonathan Woodner Co.*,
549 F. Supp. 2d 78 (D.D.C. 2008) ...................................................................................17

*Browning v. Clinton*,
292 F.3D 235 (D.C. Cir. 2002).......................................................................................... 4

*Carik v. United States Dep't of Health and Human Servs.*,
4 F. Supp. 3d 41 (D.D.C. 2013) .........................................................................................7

*Center for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*,
585 F. Supp. 3d 63 (D.D.C. 2022) .....................................................................................4

*Center for Env't Health v. Inhance Techs.*,
No. CV 22-3819 (JEB), 2023 WL 2808710 (D.D.C. Apr. 6, 2023) ...................................2

*Center for L. and Educ. v. Dep't of Educ.*,
396 F.3d 1152 (D.C. Cir. 2005) .........................................................................................6

*Citizens for Resp. & Ethics in Wash. v. FEC*,
892 F.3d 434 (D.C. Cir. 2018) ........................................................................................16

*Citizens for Resp. & Ethics in Washington v. FEC*,
993 F.3d 880 (D.C. Cir. 2021) ........................................................................................16

*Clapper v. Amnesty Int'l*,
568 U.S. 398 (2013) ...........................................................................................................7

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*,
438 U.S. 59 (1978) .............................................................................................................7

\* Authorities upon which we chiefly rely are marked with an asterisk

## TABLE OF AUTHORITIES - Continued

*Environmental Working Grp. V. FDA,*
  301 F. Supp. 3d 165 (D.D.C. 2018) ...............................................................8, 9, 10

*Food & Drug Admin. v. Alliance for Hippocratic Med.,*
  602 U.S. 367 (2024) ...................................................................................9, 12, 14

*Food & Water Watch, Inc. v. Vilsack,*
  808 F.3d 905 (D.C. Cir. 2015) ...............................................................................8, 9

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982) ...................................................................................................9

*Heckler v. Chaney,*
  470 U.S. 821 (1985) .................................................................................................15

*Hunt v. Washington State Apple Advert. Comm'n,*
  432 U.S. 333 (1977) ...................................................................................................5

*Inhance Techs., L.L.C. v. EPA,*
  96 F.4th 888 (5th Cir. 2024) ...............................................................................2, 12

*Kingman Park Civic Ass'n v. Gray,*
  27 F. Supp. 3d 142 (D.D.C. 2014) ...........................................................................7

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ...................................................................................................4

*Mountain States Legal Found. v. Glickman,*
  92 F.3d 1228 (D.C. Cir. 1996) ..................................................................................6

*National Treasury Emps. Union v. Whipple,*
  636 F. Supp. 2d 63 (D.D.C. 2009) ...........................................................................5

*Natural Res. Def. Council v. EPA,*
  464 F.3d 1 (D.C. Cir. 2006) ......................................................................................6

*People for the Ethical Treatment of Animals ("PETA") v. U.S. Dep't of Agric.,*
  797 F.3d 1087 (D.C. Cir. 2015) ...........................................................................8, 9

*Public Citizen, Inc. v. National Highway Traffic Safety Admin.,*
  489 F.3d 1279 (D.C. Cir. 2005) ................................................................................6

*Public Citizen, Inc. v. Trump,*
  297 F. Supp. 3d 6 (D.D.C. 2018) ..............................................................................6

*Schmidt v. U.S. Cap. Police Bd.,*
  826 F. Supp. 2d 59 (D.D.C. 2011) ............................................................................4

## TABLE OF AUTHORITIES - Continued

*Secretary of Lab. v. Twentymile Coal Co.,*
  456 F.3d 151 (D.C. Cir. 2006) ...................................................................15

*Sierra Club v. EPA,*
  754 F.3d 995 (D.C. Cir. 2014) .....................................................................6

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) ......................................................................................5

*Tatum v. Townsend,*
  61 A.2d 478 (D.C. 1948) .............................................................................17

*Turlock Irrigation Dist. v. FERC,*
  786 F.3d 18 (D.C. Cir. 2015) .......................................................................9

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.,*
  429 U.S. 252 (1977) ......................................................................................7

*Warth v. Seldin,*
  422 U.S. 490 (1975) ......................................................................................7

*Western Wood Preservers Inst. v. McHugh,*
  925 F. Supp. 2d 63 (D.D.C. 2013), *reconsideration denied in relevant part in*
  292 F.R.D. 145 (D.D.C. 2013) .....................................................................6

**STATUTES:**

*5 U.S.C. § 701(a)(2) ............................................................................15, 16

5 U.S.C. § 2606(f) .............................................................................................16

15 U.S.C. § 2604(a)(3) ...................................................................................14

15 U.S.C. § 2604(b)(4) ...................................................................................11

15 U.S.C. § 2605(a) ........................................................................................10

15 U.S.C. § 2605(b)(4)(A) ..............................................................................13

15 U.S.C. § 2606(a)(1)(A)–(C) ......................................................................15

*15 U.S.C. § 2606(a)(2) ..............................................................................16, 17

15 U.S.C. § 2620(a) ........................................................................................11

15 U.S.C. § 2620(b)(3) ...................................................................................11

**RULES AND REGULATIONS:**

40 C.F.R. § 702.31 .........................................................................................13

**TABLE OF AUTHORITIES - Continued**

40 C.F.R. § 702.33 ......................................................................................................14

40 C.F.R. § 702.37(a)(4) ...........................................................................................14

40 C.F.R. § 702.39 ......................................................................................................14

40 C.F.R. § 702.41 ......................................................................................................14

40 C.F.R. § 702.43 ......................................................................................................13

85 Fed. Reg. 45,109 (July 27, 2020) .........................................................................14

89 Fed. Reg. 37,028 (May 3, 2024) ....................................................................11, 14

Fed. R. Civ. P. Rule 12(b)(1) ......................................................................................4

Fed. R. Civ. P. Rule 12(b)(6) ......................................................................................4

Fed. R. Civ. P. Rule 41(a)(1)(A)(i) ............................................................................3

**OTHER AUTHORITIES:**

EPA, *Framework for TSCA New Chemicals Review of PFAS Premanufacture Notices (PMNs) and Significant New Use Notices (SNUNs)* (June 28, 2023) ............................13

EPA, *Procedures for Chemical Risk Evaluation Under the Toxic Substances Control Act (TSCA) EPA-HQ-OPPT-2023-0496: EPA Response to Comments* ..........................11

EPA, *Technical Fact Sheet – Perfluorooctane Sulfoantae (PFOS) AND Perfluorooctanoic Acid (PFOA)* ....................................................................................4

## INTRODUCTION

This lawsuit is the latest part of a long campaign by two non-governmental organizations to put Inhance Technologies LLC out of business. Plaintiffs' first lawsuit—redundant to a claim previously filed by EPA under Section 5 of the Toxic Substances Control Act (TSCA)—was promptly dismissed by this Court. Plaintiffs refiled those claims in the Eastern District of Pennsylvania, drawing an admonition from the presiding judge when they abruptly dismissed them to avoid an adverse substantive ruling. Plaintiffs also sought to block Inhance's APA challenge to EPA's Section 5 orders, which a court of appeals ultimately vacated.

Undeterred, Plaintiffs next turned on the agency, filing a FOIA lawsuit in this Court seeking to gain access to Inhance's most sensitive confidential information. And now, the Hail Mary: A challenge to EPA's alleged failure to engage in rulemaking or take an imminent-hazard action under two other provisions of TSCA that, if successful, would accomplish what Plaintiffs have so far been unable to achieve: shutting down Inhance's business.

This case is no more meritorious than any of the others. First, as a threshold matter, Plaintiffs do not have standing to prosecute this case. And second, Plaintiffs' claims fail as a matter of law. Plaintiffs allege that EPA has failed to discharge what they describe as a "non-discretionary" duty under TSCA, but the supposed trigger for this mandatory duty—a purported risk assessment performed under a different section of TSCA—was vacated by another federal court. This Court should dismiss Plaintiffs' Complaint.

## BACKGROUND

Inhance fluorinates plastic containers. Fluorinating plastic imparts what is known as "barrier protection" to the container, keeping volatile or dangerous substances inside and keeping the outside environment out. Inhance has been fluorinating containers for decades. Compl. ¶ 78. Recently, however, Inhance and EPA discovered that the fluorination process can unintentionally

create minute amounts of long-chain Per- and Polyfluoroalkyl Substances, called long-chain PFAS for short. *Id.* ¶ 68. Pressured by Plaintiffs, EPA served Inhance with a notice in March 2022, alleging that it had violated Section 5 of TSCA by engaging in a "significant new use" of long-chain PFAS without seeking prior approval. *Id.* ¶¶ 68, 69.

Both the Government and Plaintiffs brought separate lawsuits against Inhance under TSCA Section 5. The Government first filed an enforcement action in the Eastern District of Pennsylvania in December 2022. *United States v. Inhance Techs. LLC*, ECF No. 1, No. 5:22-cv-05055-JFM (E.D. Pa. Dec. 19, 2022). Plaintiffs then filed a redundant suit in this Court under the citizen suit provision of TSCA. Because the Government had already filed its own proceeding, the Court dismissed Plaintiffs' lawsuit pursuant to TSCA's diligent-prosecution bar. *Center for Env't Health v. Inhance Techs.*, No. CV 22-3819 (JEB), 2023 WL 2808710, at *4 (D.D.C. Apr. 6, 2023). Plaintiffs subsequently intervened in EPA's enforcement action in the Eastern District of Pennsylvania. *United States v. Inhance Techs. LLC*, No. 5:22-cv-05055-JFM, ECF No. 33 (E.D. Pa. Apr. 26, 2023).

In December 2023, EPA issued two unilateral orders under TSCA Section 5. Compl. ¶ 72. Inhance promptly appealed those orders to the Fifth Circuit, which granted the parties' consent order staying their effective date pending judicial review. *Inhance Techs., L.L.C. v. EPA*, No. 23-60620, ECF No. 23-2 (5th Cir. Dec. 12, 2023); Compl. ¶ 77. After briefing and argument on the merits, the court of appeals unanimously found that EPA had exceeded its statutory authority under TSCA Section 5 and vacated the unilateral orders. *Inhance Techs., L.L.C. v. EPA*, 96 F.4th 888, 890 (5th Cir. 2024); Compl. ¶¶ 77, 78.

Both Plaintiffs and the Government then quickly sought to dismiss their claims in the Pennsylvania action to avoid an adverse substantive ruling in the wake of the Fifth Circuit decision.

In May of this year, the district court reluctantly dismissed that case without prejudice, explaining that "[i]f Rule 41(a)(1)(A)(i) left us any discretion, we might well conclude that this case is past the 'point of no return.'" *United States v. Inhance Techs. LLC*, No. 5:22-cv-05055-JFM, ECF No. 103 n.1 (E.D. Pa. May 20, 2024). In its order, the Court noted that Public Employees for Environmental Responsibility (PEER) and Center for Environmental Health (CEH) had brought an "unauthorized motion[] for summary judgment before the close of pleadings (much less before the close of discovery)," which the court described as an "astonishing filing includ[ing] a 50-page brief, 45 pages of the most disputed-looking 'undisputed' material facts you'll ever see, and well over 1,000 pages of appendices." *Id.*

Meanwhile, back in this Court: Just days after oral argument in the Fifth Circuit, Plaintiffs filed a Freedom of Information Act (FOIA) case against EPA seeking disclosure of highly confidential information—including process-related and customer-specific information—Inhance had provided to EPA in connection with the agency's prior administrative proceeding. *Public Emps. for Env't Resp. v. EPA*, No. 1:24-cv-00445-JEB, ECF No. 1 (D.D.C. Feb. 15, 2024). Inhance intervened in that suit in March 2024. ECF No. 4.

Finally (or so one might hope), in July Plaintiffs filed this action, seeking to compel EPA to institute a rulemaking or an imminent hazard civil action under Sections 6 or 7 of TSCA. The Complaint specifically targets Inhance's fluorination technology—which is why Inhance is mentioned in the Complaint more than three dozen times. Among other things, Plaintiffs seek an order from this Court compelling EPA to "immediately propos[e] a rule under TSCA section 6(a) prohibiting the production of PFOA during the Inhance fluorination process" as well as an order requiring EPA to "immediately file an imminent hazard action under TSCA section 7 against Inhance to prohibit the formation of PFOA during the fluorination process"—or, alternatively,

"make its proposed rule under section 6(a) imposing such a ban immediately effective upon publication in the Federal Register."[1]  Compl. ¶¶ 121, 133.

## STANDARD OF REVIEW

A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) "presents a threshold challenge to a court's jurisdiction."  *Center for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 585 F. Supp. 3d 63, 69 (D.D.C. 2022).  Plaintiffs "bear[] the burden of proving by a preponderance of evidence that the Court has subject matter jurisdiction" over their claims. *Schmidt v. U.S. Cap. Police Bd.*, 826 F. Supp. 2d 59, 69 (D.D.C. 2011).  To establish standing, a plaintiff must show injury-in fact, that their injury may be redressed by a favorable judicial decision, and that their injuries are fairly traceable to the conduct they allege.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  When ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true.  *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).  But the court "accept[s] neither inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint, nor legal conclusions cast in the form of factual allegations." *Browning v. Clinton*, 292 F.3D 235, 242 (D.C. Cir. 2002).  The court may take judicial notice of

---

[1] Perfluorooctanoic Acid (PFOA) is a PFAS compound which is comprised of chains of eight carbons.  EPA, *Technical Fact Sheet–Perfluorooctane Sulfoantae (PFOS) AND Perfluorooctanoic Acid (PFOA)*, https://19january2021snapshot.epa.gov/sites/static/files/2017-12/documents/ffrrofactsheet_contaminants_pfos_pfoa_11-20-17_508_0.pd (last accessed Sept. 11, 2024).

public records while considering a motion to dismiss.  *National Treasury Emps. Union v. Whipple*, 636 F. Supp. 2d 63, 77 n.8 (D.D.C. 2009).

## ARGUMENT

### I.    PLAINTIFFS LACK STANDING.

Plaintiffs lack associational standing because they cannot show that any individual member has standing to sue.  And Plaintiffs lack organizational standing because neither Plaintiff has alleged a direct injury to the organization as a result of EPA's action.

#### A.    Plaintiffs Lack Associational Standing.

To have associational standing, an organization must show that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members."  *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Associational standing "require[s] plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-498 (2009).  An individual has Article III standing to seek injunctive relief only if he can demonstrate that he "is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."  *Id.* at 493.  Plaintiffs cannot meet this burden.

Neither CEH nor PEER make any specific allegations that identify any member that has suffered or would suffer harm.  CEH alleges merely that "Board members, supporters and staff of CEH use a variety of products packaged in plastic containers that *may be* fluorinated but *cannot*

*ascertain whether they contain PFOA and other PFAS*." Compl. ¶ 29 (emphases added). PEER makes an identical allegation on behalf of "Board members, supporters and staff of PEER." *Id.* ¶ 36. But harm to employees, board members, "supporters and . . . social media followers," Compl. ¶¶ 28, 32, is not the test; Plaintiffs have not alleged that any *members* of their associations are harmed, let alone identified any specific member who alleges any specific injury. That alone is fatal to Plaintiffs' claims. *See Western Wood Preservers Inst. v. McHugh*, 925 F. Supp. 2d 63, 70 (D.D.C. 2013) (no associational standing where "plaintiffs have not identified a single member firm that has suffered the injuries they allege"), *reconsideration denied in relevant part in* 292 F.R.D. 145 (D.D.C. 2013).

Even aside from Plaintiffs' failure to identify an individual member that has been harmed, the alleged harm itself is not sufficient. The mere *risk* of *possible* exposure to PFOA or other PFAS is not enough to establish a concrete and particularized injury. *See Natural Res. Def. Council v. EPA*, 464 F.3d 1, 6 (D.C. Cir. 2006) ("Were all purely speculative 'increased risks' deemed injurious, the entire requirement of 'actual or imminent injury' would be rendered moot, because all hypothesized, nonimminent 'injuries' could be dressed up as 'increased risk of future injury.'") (quoting *Center for L. and Educ. v. Department of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005)). The D.C. Circuit requires that a plaintiff show "both (i) a *substantially* increased risk of harm and (ii) a *substantial* probability of harm with that increase taken into account." *Public Citizen, Inc. v. National Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 (D.C. Cir. 2005) (emphasis in original). This "standard is not easily met." *Public Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 21–22 (D.D.C. 2018). "The increased risk 'must be "nontrivial," . . . and "sufficient to take a suit out of the category of the hypothetical." ' " *Sierra Club v. EPA*, 754 F.3d 995, 1001 (D.C. Cir. 2014) (quoting *Natural Res. Def. Council v. EPA*, 464 F.3d at 6 and *Mountain States*

*Legal Found. v. Glickman*, 92 F.3d 1228, 1234–35 (D.C. Cir. 1996)).  Plaintiffs' allegations that

their supporters "use a variety of products packaged in plastic containers that *may be* fluorinated,"

Compl. ¶¶ 29, 36 (emphasis added), is a classic speculative injury.  *See Kingman Park Civic Ass'n*

*v. Gray*, 27 F. Supp. 3d 142, 156–157 (D.D.C. 2014) (no associational standing where plaintiff

alleged that installation of overhead wires may cause health problems); *see also Carik v. United*

*States Dep't of Health and Human Servs.*, 4 F. Supp. 3d 41, 51–52 (D.D.C. 2013) (plaintiffs who

"merely allege[d] that there is a possibility that adverse effects may result from taking a diluted

dose" of a medicine had not adequately alleged injury).  Plaintiffs must adequately allege that at

least one of their individual members faces an "actual or imminent" threat of injury.  They have

not done so here.

Nor would any theoretical injury be "fairly traceable" to EPA's decision not to engage in

a rulemaking or imminent hazard action that would shut down Inhance.  *Clapper v. Amnesty Int'l*,

568 U.S. 398, 411 (2013); *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 72

(1978) (Article III standing requires "not only a 'distinct and palpable injury,' to the plaintiff . . .

but also a 'fairly traceable' causal connection between the claimed injury and the challenged

conduct") (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975) and *Village of Arlington Heights v.*

*Metropolitan Hous. Dev. Corp.*, 429 U.S. 252 (1977)).  CEH and PEER only allege that their

members use "products packaged in plastic containers that may be fluorinated."  Compl. ¶¶ 29,

36.  Plaintiffs make no showing that any of their members used a plastic container that was actually

fluorinated, let alone containing any detectable level of PFAS, much less a level sufficient to cause

injury such that it would be subject to the rulemaking or imminent-hazard action they demand.

Nor, for purposes of its Section 7 claim, have Plaintiffs made any showing that any of their

members used a plastic container that was fluorinated by Inhance.

Finally, Plaintiffs do not show how their requested relief—the publication of a proposed rule under TSCA Section 6 or the government's filing of a civil imminent hazard action against Inhance under TSCA Section 7—would redress their alleged injuries.  Even if Inhance's business were shut down, Plaintiffs' members will *still* not know whether any particular container— fluorinated or not—contains PFOA due to materials used in manufacturing of the container itself (*i.e.*, prior to whether or not the container was fluorinated), or contains PFOA introduced by the product stored within the container.  Nor would a Section 7 action redress any alleged injury, because Plaintiffs' members will not know whether a container may contain PFOA after fluorination by a third party, especially given that fluorinated containers are routinely imported from abroad.

Because Plaintiffs have not established that any of their individual members would have standing to sue, Plaintiffs cannot establish associational standing.

### B.     Plaintiffs Fail To Establish Organizational Standing.

Plaintiffs likewise do not have organizational standing.  "For 'organizational standing,' the standard is the same as the one for individuals: the organization must show 'actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision.'"  *Environmental Working Grp. v. FDA*, 301 F. Supp. 3d 165, 170 (D.D.C. 2018) (quoting *People for the Ethical Treatment of Animals ("PETA") v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015)).  Plaintiffs have not alleged facts sufficient to demonstrate that they *as organizations* have suffered a concrete injury, and as with associational standing, the injury Plaintiffs complain of is neither traceable to EPA's conduct nor redressable by the relief they seek.

To bring a suit as an organization, the organization "must have 'suffered a concrete and demonstrable injury to [its] activities.' "  *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919

(D.C. Cir. 2015) (quoting *PETA*, 797 F.3d at 1093). "Making this determination is a two-part inquiry—'we ask, first, whether the agency's action or omission to act injured the [organization's] interest and, second, whether the organization used its resources to counteract that harm." *Id.* (quoting *PETA*, 797 F.3d at 1093). Plaintiffs here fail at the first prong.

"To satisfy the first prong—'an injury to its interest'—'an organization must allege that the defendant's conduct perceptibly impaired the organizations ability to provide services.'" *Environmental Working Grp.*, 301 F. Supp. 3d at 171 (quoting *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015). Perceptible impairment requires "the defendant's conduct causes an 'inhibition of [the organization's] daily operations.'" *Food & Water Watch*, 808 F.3d at 919 (quoting *PETA*, 797 F.3d at 1093). A plaintiff must show a "concrete and demonstrable injury to the organization's activities—with [a] consequent drain on the organization's resources—[that] constitutes far more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). And under both D.C. Circuit and Supreme Court precedent, "an organization's use of resources for litigation, investigation in anticipation of litigation, or advocacy is not sufficient to give rise to an Article III injury." *Food & Water Watch*, 808 F.3d at 919; *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 394 (2024) ("[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action.").

Where "organizations are squarely focused on warning the public about health hazards in consumer products," then their efforts to do just that cannot be the basis for an organizational injury. *See, e.g.*, *Environmental Working Grp.*, 301 F. Supp. 3d at 171. Organizations are not injured where they have done nothing that stretches "beyond their typical expenditures" of

resources. *Id.* at 172. Given CEH and PEER's longtime focus on PFAS, they cannot claim harm sufficient to confer constitutional standing from engaging in their typical activities. Compl. ¶ 30 (describing CEH's "significant priority" to "enhance protections against the health and environmental risks of PFAS."); *id.* ¶ 34 ("PEER has worked to increase public knowledge and awareness of the presence of PFAS in fluorinated containers and their contents, and has advocated regulatory and judicial action to stop the fluorination of containers that create PFAS."). CEH and PEER affirmatively allege that their organizations focus on PFAS advocacy and regulation. They have not suffered a cognizable organizational injury by continuing their attempts to compel regulation of PFAS.

Because CEH and PEER fail to state a cognizable injury, they cannot meet Article III's standing requirements.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM.

### A.    Plaintiffs' Requested Relief Under TSCA Section 6 Is Not Available.

#### 1.    *EPA Must Conduct A Risk Evaluation To Determine Unreasonable Risk Before Publishing A Rule Under TSCA Section 6.*

The relief Plaintiffs seek under TSCA Section 6—EPA publishing a proposed rule prohibiting the formation of PFOA during fluorination—is not available. TSCA Section 6 requires that EPA first conduct a risk evaluation to determine unreasonable risk prior to taking action under Section 6. EPA has not done so. Plaintiffs' TSCA claims therefore fail as a matter of law.

TSCA Section 6(a) provides that "[i]f the Administrator determines in accordance with subsection (b)(4)(A) that the manufacture, processing, distribution in commerce, use or disposal of a chemical substance or mixture" presents an unreasonable risk, EPA shall promulgate a rule imposing requirements "to the extent necessary so the chemical substance no longer presents such a risk." 15 U.S.C. § 2605(a). Section 6(b)(4)(A) requires that EPA conduct risk evaluations "to

determine whether a chemical substance presents an unreasonable risk of injury to health or the environment." *Id.* § 2604(b)(4). Thus, Section 6 requires EPA to prepare a risk evaluation *consistent with Section 6(b)(4)(A)* before issuing a proposed rule.

EPA recently confirmed this interpretation in its response to public comments received on its proposed amendments to the agency's risk evaluation procedures under Section 6(b). 89 Fed. Reg. 37,028 (May 3, 2024). There, EPA confirmed that, "[b]y law, the Agency begins the process of determining appropriate risk management actions under TSCA section 6(a) only after a determination of unreasonable risk is made in the risk evaluation." EPA, Procedures for Chemical Risk Evaluation Under the Toxic Substances Control Act (TSCA) EPA-HQ-OPPT-2023-0496: EPA Response to Comments, at § 1.2, https://www.regulations.gov/document/EPA-HQ-OPPT-2023-0496-0431 (last accessed Sept. 11, 2024).

Nothing in TSCA's citizen-petition provision gives EPA the authority to sidestep the mandated Section 6 risk evaluation process if EPA grants a rulemaking petition. Under TSCA's citizen-petition section, any person may petition EPA "to initiate a proceeding for the issuance, amendment, or repeal" of a Section 6 rule. 15 U.S.C. § 2620(a). If the Administrator grants a petition for a Section 6 rulemaking, the agency must "promptly commence an appropriate proceeding" in accordance with Section 6. *Id.* at § 2620(b)(3). EPA has stated that "the action that constitutes 'initiation' of an appropriate proceeding will vary depending on the circumstances of a particular case." Letter from Assistant Administrator Freedhoff, Ph.D., to Robert M. Sussman, EPA Response to October 14, 2020 TSCA Section 21 Petition, at 2 (Dec. 28, 2021), *available at* https://www.epa.gov/system/files/documents/2021-12/pfaspetitionresponse.pdf (last accessed Sept. 11, 2024). EPA also has explained that options for initiating a proceeding include beginning a regulatory investigation, holding public hearings, or issuing an advanced notice of proposed

rulemaking. *Id.* However, EPA also noted that "initiating a procedure in response to a Section 21 petition does not commit EPA to subsequently take any specific type of action such as proposing a rule or [] promulgating final regulations." *Id.* To comply with TSCA, the first step in an "appropriate proceeding" under Section 6 must include the preparation of a risk evaluation consistent with Section 6(b)(4). Only after EPA has completed a risk evaluation, specific to the chemicals and uses identified in the Section 21 petition, can EPA properly evaluate whether there is an unreasonable risk that necessitates proceeding with the development of a proposed Section 6 rule.

2.    *Plaintiffs Cannot Rely On EPA's Prior TSCA Section 5 Order To Satisfy Section 6's Risk Evaluation Requirement.*

Plaintiffs point to EPA's prior Section 5 orders to demand that EPA now pursue rulemaking under Section 6. Compl. ¶¶ 17, 71–76. That gambit fails for two reasons. First, the supposed predicate for further agency action has been wiped away: The Fifth Circuit vacated EPA's Section 5 orders after concluding that Inhance's decades-old fluorination process could not be regulated as a "significant new use" under Section 5 as a matter of law. *Inhance Techs. LLC*, 96 F.4th at 895. The agency's risk determination under Section 5(a)(3)(A) was part of that order. A vacated order does not satisfy EPA's risk evaluation requirement under Section 6.

Second, the assessment EPA included in its *Section 5* order does not meet the regulatory requirements for *Section 6* risk assessments. To start, the Section 5 order was directed to a single company—Inhance—whereas the Complaint requests a Section 6 rulemaking targeting *all* companies that manufacture or import products with fluorination.

Further, there are substantial material differences between how EPA approaches risk evaluations for PFAS compounds between the Section 5 and Section 6 programs. EPA's Section 5 New Chemicals Program relies on guidance that established a new framework for reviewing pre-

manufacture notices and significant new use notices submitted for all PFAS compounds.  EPA, *Framework for TSCA New Chemicals Review of PFAS Premanufacture Notices (PMNs) and Significant New Use Notices (SNUNs)* (June 28, 2023), *available at* https://www.epa.gov/system/files/documents/2023-06/PFAS%20Framework_Public%20Release_6-28-23_Final_508c.pdf (last accessed Sept. 11, 2024).

In assessing risk for PFAS compounds under Section 5, EPA explains in that guidance that the New Chemical Program will: (i) generally assume that the compound(s) are persistent, bioaccumulative, and toxic chemicals; (ii) only qualitatively evaluate risks; and (iii) typically find that PFAS present an unreasonable risk.  *Id.* at 7, 9.  This guidance does not apply to risk evaluations conducted under Section 6:  It is directed specifically to EPA's *new* chemicals review of PFAS *pre*-manufacture Notices (PMNs) and Significant *New Use* Notices (SNUNs).

Review under Section 6 is an entirely different process that requires, among other things, EPA to conduct a "risk evaluation" of preexisting uses of extant chemical substances consistent with the procedures and practices set forth in the agency's own regulations.  15 U.S.C. § 2605(b)(4)(A);  40 C.F.R. § 702.31 (40 C.F.R. Part 702 Subpart B establishes the risk evaluation process "to determine whether a chemical substance presents an unreasonable risk of injury to health or the environment" as required for Section 6 rulemakings).

When conducting a risk evaluation under Section 6, EPA regulations (i) dictate the components of a risk evaluation that must be developed (*e.g.*, scope, hazard assessment, exposure assessment, risk characterization, risk determination), 40 C.F.R. § 702.39, (ii) require the publication and solicitation of public comments on the draft risk evaluation before publication of the final risk evaluation in the Federal Register, 40 C.F.R. § 702.43, and (iii) mandate the risk

assessment be subject to peer review.  40 C.F.R. § 702.41.  Plaintiffs do not allege that EPA's Section 5 risk determination comported with the requirements for a Section 6 risk assessment for a simple reason: it did not.  It therefore has no basis to force the agency to take action under Section 6.

EPA's now-vacated Section 5 assessment is also inadequate for Section 6 purposes because it did not examine other conditions of use for the relevant PFAS compounds.  Section 5 only requires EPA to determine if a new chemical or significant new use presents an unreasonable risk based on the agency's review of *pre-manufacture* notices and significant *new use* notices it receives.  *See* 15 U.S.C. § 2604(a)(3).  When evaluating risk under Section 6, however, the agency must consider *all* conditions of use of a chemical substance, meaning all "circumstances . . . under which a chemical substance is intended, known, or reasonably foreseen to be manufactured, processed, distributed in commerce, used, or disposed of."  40 C.F.R. § 702.33; 40 C.F.R. § 702.37(a)(4) ("EPA will not exclude conditions of use from the scope of the risk evaluation.").  In adopting its recently finalized regulations, EPA explained that evaluating all conditions of use in a Section 6 rulemaking was not only mandated by TSCA, but also necessary "from a scientific perspective to ensure development of a technically sound determination as to whether a chemical substance presents an unreasonable risk."  89 Fed. Reg. 37,028 at 37,032 (rejecting commenters' suggestion that the agency could evaluate only "a subset of a chemical's conditions of use").

Here, the Complaint asks EPA to regulate only one condition of use: the potential, unintentional formation of PFOA during the fluorination of polyolefin plastic containers.  But there are a large number of other uses of PFOA known to the agency.  *See, e.g.*, 85 Fed. Reg. 45,109 (July 27, 2020).  The narrow focus of the Complaint therefore asks EPA to take action contrary to EPA's own regulations.

To regulate uses of PFOA under Section 6, EPA also must evaluate whether that chemical substance, under all conditions of use, presents an *unreasonable* risk when compared to its benefits. This evaluation, therefore, cannot be limited to unintentional formation of minute quantities of compounds that may be formed during fluorination of plastic containers while ignoring all other sources of, and accompanying pathways of exposure for, PFOA in commerce. To date, EPA has not attempted to conduct this type of evaluation, and doing so will be no small undertaking. Absent the completion of a full analysis that considers all conditions of use for PFOA, EPA cannot proceed with a proposed Section 6 rule.

### B.    Plaintiffs Are Not Entitled To Section 7 Relief.

Plaintiffs also fail to state a claim under Section 7 of TSCA. Section 7 vests EPA with the *discretion* to initiate an action under clear circumstances: "The Administrator *may* commence a civil action" to seize "an imminently hazardous chemical substance or mixture or any article containing such a substance or mixture"; for relief against "any person who manufactures, processes, distributes in commerce, or uses, or disposes of" such a substance or mixture; or "for both such seizure and relief." 15 U.S.C. § 2606(a)(1)(A)–(C) (emphasis added). That is not a mandatory directive, and third parties cannot bring an action seeking to compel EPA to take certain actions where the statute gives the agency discretion to choose a different course.

The APA provides that the decision not to bring an administrative enforcement action is "committed to agency discretion by law" and is therefore not an agency action subject to judicial review. 5 U.S.C. § 701(a)(2). In adopting this limit on judicial power, Congress adopted the "traditional nonreviewability of prosecutorial charging decisions," which the APA makes "applicable to administrative cases." *Secretary of Lab. v. Twentymile Coal Co.*, 456 F.3d 151, 157 (D.C. Cir. 2006) (citing 5 U.S.C. § 701(a)(2)). The Supreme Court affirmed this principle nearly forty years ago in *Heckler v. Chaney*, 470 U.S. 821 (1985), and the D.C. Circuit has consistently

turned back efforts by third parties to challenge agency decisions not to take one administrative enforcement action or another. *See, e.g.*, *Association of Irritated Residents v. EPA*, 494 F.3d 1027, 1028, 1037 (D.C. Cir. 2007) ("[E]xercises of EPA's enforcement discretion are not reviewable by this court."); *Citizens for Resp. & Ethics in Washington v. FEC*, 892 F.3d 434, 439 (D.C. Cir. 2018) ("To state the obvious, the word 'may' imposes no constraints on the Commission's judgment about whether, in a particular matter, it should bring an enforcement action."); *Citizens for Resp. & Ethics in Washington v. FEC*, 993 F.3d 880, 887 (D.C. Cir. 2021) ("[D]ecisions not to take enforcement action have 'traditionally been "committed to agency discretion," and we believe that the Congress enacting the APA did not intend to alter that tradition.' ").

Neither can Plaintiffs avail themselves of the mandatory provisions of TSCA Section 7. That authority kicks in only at the end of an administrative road where (1) EPA is finalizing a Section 6 rule, that (2) is not immediately effective, and (3) EPA has determined there is indeed an "imminently hazardous chemical substance or mixture" to take enforcement action against. 15 U.S.C. § 2606(a)(2) (identifying instances in which EPA "shall commence" a Section 7 action). And as explained above, that third precondition—EPA's determination —would need to be based upon a Section 6-compliant risk evaluation process and a *further* conclusion that injury to health or the environment will occur before a final Section 6 rule can protect against such risk. *See* 5 U.S.C. § 2606(f).

That is not where things stand here. Plaintiffs' Complaint reveals that all the prerequisites for a Section 7 action are lacking: EPA has not "[p]ropos[ed] a rule under TSCA section 6(a) prohibiting the production of PFOA during the Inhance fluorination process." Compl. ¶ 121. Because there is no final Section 6 rule, there is no interim period between its promulgation and effective date. *Id.* ¶ 50. There also is no EPA determination based upon a valid Section 6

16

rulemaking that could authorize "an imminent hazard suit against Inhance seeking an immediate ban on PFOA formation during fluorination." *Id.* Only if EPA later concluded that the terms of a final Section 6 rule are inadequate to protect against an injury until there is a final Section 6 rule promulgated could EPA—to say nothing of private plaintiffs—initiate a TSCA Section 7 action under the mandatory language in 15 U.S.C. § 2606(a)(2). Assuming that Section 7 provides "meaningful standards for defining the limits of" EPA discretion such that its ultimate determination is reviewable under the APA, *Heckler*, 470 U.S. at 834–835, Plaintiffs cannot satisfy the prerequisites necessary for that sort of judicial inquiry. And because "the nonexistence of a cause of action when the suit was started is a fatal defect," *Bourbeau v. Jonathan Woodner Co.*, 549 F. Supp. 2d 78, 86 (D.D.C. 2008) (quoting *Tatum v. Townsend*, 61 A.2d 478 (D.C. 1948)), their lawsuit must be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims should be dismissed.

Respectfully submitted,

/s/ *Susan M. Cook*
Susan M. Cook (D.C. Bar No. 462978)
Catherine E. Stetson (D.C. Bar No. 453221)
Adam Kushner (D.C. Bar No. 426344)
Marlan Golden (D.C. Bar No. 1673073)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Phone: (202) 637-5600
Fax: (202) 637-5910
susan.cook@hoganlovells.com

J. Tom Boer (D.C. Bar. No. 469585)
HOGAN LOVELLS US LLP
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Phone: (415) 374-2336

Fax: (415) 374-2499
tom.boer@hoganlovells.com

Dated:  September 11, 2024                    *Counsel for Inhance Technologies LLC*